75, (1901).]    Syllabus—Opinion of Court below.


## Brenneman's Estate.

*Contract—Agreement in writing—Seal—Consideration—Family settlement.*

An agreement in writing, under seal, based by its own recitals on a "valuable consideration," between brothers and sisters, the purpose of which is the equalization of the distribution of an estate, and therefore in the nature of a family settlement, is a binding and enforceable obligation.

Argued March 18, 1901. Appeal, No. 17, March T., 1901, by Matilda Yinger et al., from decree of O. C. York Co., dismissing exceptions to auditor's report in the Estate of Abraham Brenneman, Deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to report of H. C. Niles, Esq., auditor.

W. F. BAY STEWART, J., filed the following opinion:

The testator made an unequal division of his estate among his children. To his son, George W. Brenneman, he gave $300 less than one full equal share. To Mary A. Mitzel, a daughter, he gave $1.00. The balance on the account of his executor amounts to $10,327.02. This unequal division occasioned naturally dissatisfaction and irritation on the part of those who received less than a full share, particularly on the part of Mrs. Mitzel.

All the children were of full age, and they agreed that George M. Brenneman should have a full share, without deducting the $300 as required by the will. Mrs. Mitzel was and had been for a considerable time, as shown by the testimony, somewhat sick or indisposed, and after she learned the contents of the will she worried over it, and appealed to her brothers and sisters to rectify the discrimination against her. Judge BITTENGER, a son-in-law of the testator, suggested to his wife that she and the others had better contribute enough from their respective shares to equalize Mrs. Mitzel with the others, and accordingly drew the paper over which this controversy arises. This paper is as follows:

"Whereas, it is the desire of the undersigned legatees of Abraham Brenneman late of Spring Garden township, York

county, Pa., deceased, that Mary Mitzel, wife of John Mitzel, of said Spring Garden township, shall receive, out of the estate of said testator, an equal share with her sisters, share and share alike, we do hereby, for a valuable consideration, agree that there shall be deducted from our respective shares, a sum sufficient and which is required to be deducted from each of the other children of said Abraham Brenneman, deceased, to make her an equal share in said estate, and said respective sums so deducted from each of the said other children shall be paid to said Mary Mitzel our said sister, by the executor, John W. Bittenger, or other person settling said estate, upon the distribution of the same.

" Witness our hands and seals this    day of May, 1890.

" Witnesses.

| " John W. Bittenger. | Anna Bittenger, | [Seal.] |
| | " Geo. Brenneman, | [Seal.] |
| | " Milton Brenneman, | [Seal.] |
| | " Matilda Yinger, | [Seal.] |
| | " Sarah E. Peeling, | [Seal ] |
| | " Jennie E. Lehr, | [Seal.] |
| | her | |
| " Witness to mark. | Dora X Yinger, | [Seal.] |
| | mark | |
| " Milton Brenneman. | Alice J. Yinger. | |
| " Henry Neater." | | |

" It will be observed that this paper recites a valuable consideration and is under seal, and it was so drawn according to Judge Bittenger's testimony " so as to prevent those who signed it from afterwards objecting to carrying out the purpose." Mary A. Mitzel died before the distribution and the other legatees now resist the payment of this money to her administrator; (1) because the paper was without any valuable consideration; (2) because Mary A. Mitzel said at and before it was executed that she would will the money back to the heirs again, and (3) because it was an unexecuted gift, and therefore revocable at the pleasure of the donors, at any time before the actual payment of the money.

As to the first objection :

According to the testimony, no consideration was agreed

upon or expected. It was the voluntary act of the parties, and by putting the instrument under seal they expressly waived the question of the necessity of any consideration, in order to make the paper a binding obligation.

In Meek v. Frantz, 171 Pa. 632, it is said by the Supreme Court: " There is a well settled distinction between cases in which a valuable consideration was intended to pass and therefore furnished the motive for entering into the contract, and cases in which such consideration was not contemplated by the parties. In the former failure of consideration is a defense, although the contract is under seal, while in the latter equity will not relieve against an instrument under seal, merely on the ground of want of consideration," citing Yard v. Patton, 13 Pa. 278.

As has been said, in this case no consideration was agreed upon or expected. The paper is not a mere nullity. It was executed and delivered with a full knowledge of every fact pertaining to the estate and the parties, without any fraud, concealment or overreaching on the part of the beneficiary, or of any one else. It is expressed in apt language to carry out the purpose designed. The only fact affecting the estate or relation of the parties not known to them at the time of its execution, is that Mary A. Mitzel would die before the actual distribution of the fund. This is actus dei and actus dei nemini facit injuriam.

The resistance to this paper is practically an appeal to a chancellor to set it aside and cancel it. No chancellor would entertain such a proposition for a moment.

As to the second objection :

There are several valid reasons why this objection cannot avail the exceptants. To give to the promise of Mary A. Mitzel to make a will and bequeath the money back to the other parties any effect, it must have been a part of the consideration for executing the paper. Such promise must have been omitted from the contract, through fraud, accident or mistake; there must have been witnesses competent to testify, and who did establish not only that the promise was made, but that it was so omitted and that without such promise they would not have signed. The case is utterly barren of such proof. Conceding the witnesses to have been competent for such purpose, which

they were not, (except for the fact that no objection to their incompetency was taken when they were called and sworn) not one of them testified that they executed the paper relying on such promise to make a will, but they each repudiated any such idea. They all testified that it was because of the sickness of Mrs. Mitzel and her worrying over her father's will, that they signed.

As to the third objection:

A gift of a bond is a gift of the money represented by it: Sherk v. Endress, 3 W. & S. 255. "A man may give a present bond to pay a sum of money at his death, and a delivery of it to the obligee renders it perfect as a present obligation, though payable at a subsequent, whether a fixed or uncertain, period to be afterwards ascertained or made certain:" Mack's Appeal, 68 Pa. 231.

But this paper was more than a bond. It was not only under seal and delivered, but it was an actual assignment and transfer of the money represented by it to the beneficiary. It does not call upon those who executed it to pay, but it enables the holder to come in and demand a portion of a fund which they do not have in possession, but is in the possession of another for distribution.

But there is still a stronger and better reason for sustaining the validity of this paper, which was not raised or discussed before the auditor, namely, that the transaction constituted a family settlement among all the parties interested under the will of the testator.

It is unnecessary to rehearse the cause which led up to the preparation and execution and delivery of this paper. The illness of Mary A. Mitzel, her dissatisfaction and worry over her practical disinheritance by her father; her appeal to her brothers and sisters to correct this supposed injustice, and their yielding to her importunities, are all facts well established by the evidence. It was for her relief and from motives of the highest consideration that they executed the paper; to substitute an equal division of the testator's property among all his children, for the unequal one made by him; to relieve the strained relation to which the evidence in at least one instance points, and to restore and establish equality and harmony among

them all. They all understood this, and no higher or more laudable act could have been engaged in by them.

The law favors such settlements, and when made upon full knowledge and consideration of all the circumstances, will be slow to undo them.

"Family compromises, especially if they are made in good faith with full disclosure, are favored in equity and may be sustained by the court, albeit perhaps resting upon grounds which would not have been considered satisfactory if the transaction had occurred among strangers:" Bispham's Equity, 189. The law favors family settlements, and will enforce agreements to settle family disputes upon principles which are not applied to agreements generally : Barton v. Wells, 5 Wharton, 225 ; Worrall's Accounts, 5 W. & S. 111–115. All compromises and settlements by families are maintained not only as beneficial to themselves, but the law seeks to sustain them as conducing to peace and harmony where it ought more especially to exist: Shartel's Appeal, 64 Pa. 25. Family arrangements are favorites of the law, and when fairly made are never allowed to be disturbed by the parties or any other for them : Walworth v. Abel, 52 Pa. 370 ; Wistar's Appeal, 80 Pa. 484 ; Bierer's Appeal, 92 Pa. 265 ; Burkholder's Appeal, 105 Pa. 37. See especially Wilen's Appeal, 105 Pa. 121, Follmer's Appeal, 37 Pa. 121 and Delamater's Estate, 1 Wharton, 361. In this last case, one of the two sisters, the only legatees under the father's will, executed an assignment to her sister of certain shares of bank stock which had not been included in the testamentary disposition of the testator's property, believing, as recited in the assignment, that they had been intended by the father for this sister. The assignment stated no consideration and was not under seal. The executor transferred the shares in accordance with the assignment, and took credit, therefor, in his account. To this, the assignor excepted, and the court dismissed the exceptions which on appeal to the Supreme Court was affirmed in an able and lucid opinion by Chief Justice GIBSON. This case also throws a flood of light on the other questions raised and previously discussed in this opinion, and may be said to rule them directly against the exceptants.

For the reasons given, I am therefore of opinion that the exceptions should be dismissed, and the auditor's report confirmed.

And now, October 22, 1900, the exceptions to the auditor's report are dismissed, and the report confirmed absolutely.

*Error assigned* was the decree of the court.

*N. M. Wanner*, with him *W. A. Miller*, for appellants.—No valuable consideration was paid, or passed, at the time of the execution or delivery of the agreement.

Equity will not enforce an incomplete gift: Walsh's Appeal, 122 Pa. 177; Yard v. Patton, 13 Pa. 281, 282; McQueen's Appeal, 104 Pa. 595.

If this was nudum pactum—being without any valuable consideration, because no will was made—then it is clearly void and not enforceable: Shorb v. Shultz, 43 Pa. 208; Walstrom v. Hopkins, 103 Pa. 118; Stokes's Est., 9 W. N. C. 439; Kidder v. Kidder, 33 Pa. 268; Bixler v. Ream, 3 P. & W. 282; Waynesburg College, 111 Pa. 130.

Consideration of blood or natural affection are not sufficient to support a promise to give: Kennedy v. Ware, 1 Pa. 450; Lyon v. Marclay, 1 Watts, 271; Fink v. Cox, 18 Johns. 145.

A contract to make a will, if made on a good consideration is enforceable: Wright's Estate, 155 Pa. 64; Brinker v. Brinker, 7 Pa. 54; Burgess v. Burgess, 109 Pa. 312; Smith v. Tuit, 127 Pa. 341; Brightly's Equity Jurisprudence, p. 219, sec. 252.

It is competent to show by parol what the consideration of an instrument under seal actually was, and that it included other things not named in it: Heysham v. Dettre, 89 Pa. 506.

*J. S. Black*, for appellee.—The case at bar is ruled by Candor & Henderson's App., 27 Pa. 119.

An agreement under seal, without consideration, to make a gift may be enforced as a legal obligation: Yard v. Patton, 13 Pa. 285; Mack's Appeal, 68 Pa. 233; Ross's Appeal, 127 Pa. 4; Hummel's Estate, 161 Pa. 215; Meek v. Frantz, 171 Pa. 632.

OPINION BY WILLIAM W. PORTER, J., April 16, 1901:

The agreement upon which the award in distribution was made to the appellee was in writing. It was under seal. It was, by its own recitals, based upon a "valuable consideration."

75, (1901).]                    Opinion of the Court.

It was between brothers and sisters, children of the testator. Its purpose was the equalization of distribution of his estate among them, and was, therefore, in the nature of a family settlement. It was clearly a binding and enforceable obligation. It is urged that it was executed in consideration of a promise that the moneys passing under it would be returned by the making of a will by the sister receiving the benefit. The auditor finds against this contention on the facts, and an examination of the testimony before him warranted the finding. Nothing by way of discussion can be profitably added to the opinion filed by the court below in confirmation of the auditor's report. We are unanimously of the opinion that the decree made must stand and it is therefore affirmed.